On this case, we are again dealing with an illegal reentry case where we filed to dismiss the indictment on the Speedy Trial Act ground and also filed a motion to dismiss based on a collateral attack of the underlying removal order. The Speedy Trial Act has been briefed fully. I'm confident that the court has everything it needs to decide the first issue on the appeal, whether the district court erred by denying his motion to find the underlying removal order invalid and dismiss the case on that ground. On Mr. Espinal's case, again, I would like to start with the big picture and then move into the details. The big picture in this case is Mr. Espinal never received notice of his removal hearing back in October 2004, so he was ordered removed in absentia a few months later in early 2005. The government in this case faults Mr. Espinal for really everything that's happened in this case. He made some bad choices, and without a doubt, Mr. Espinal did make some bad choices. It's a little bit of a simplistic, too simplistic to blame everything on him when you look at the details of this case, and frankly, if everybody always made the right choices, nobody in this courtroom would even have a job. So the question I'd like the court to consider is not whether Mr. Espinal made bad choices when it comes to looking at his underlying removal order, but did the administrative agency follow the laws and regulations that were designed to provide him with due process, and if the answer is no, then Mr. Espinal should have a chance to have those proceedings that are fair and are pursuant to the law and regulations, and secondly, that he shouldn't be held criminally responsible for illegal reentry if the underlying removal order was invalid. So pursuant to 8 U.S. Code 1326D, Mr. Espinal could collaterally attack the validity of the prior removal order if he can show that he exhausted administrative remedies that may have been available to seek relief, that the deportation proceeding at which the order was issued deprived him of the opportunity for judicial review, and the entry of the order was fundamentally unfair. That meaning that due process was violated and he suffered actual prejudice. In Mr. Espinal's case, digging into the details, our argument is essentially that there was nothing to exhaust due to the flawed procedures and the failure by the administrative agency to follow the rules and the law in his case. So his proceedings with immigration began all the way back in 2004. The agency issued a notice to appear and that ordered him to appear before an immigration judge in San Antonio at a date to be set, at a time to be set, why he should not be removed from the United States. He was then released on his own recognizance. The notice to appear not stating the time or place to appear is in stark contrast to any other court. Is there really any other court where you would get that sort of very vague notice with no expectation of when you would get a notice, where the notice would tell you to appear and when? In the District Court Document 35, Exhibit 3, the notice to appear itself doesn't even have a certificate of service. Again, we're going back into these regulations because of the proceedings. So if the initial charging document doesn't even say that it was served on Mr. Espinal, how do we know it was actually served on him or he ever even got a copy of it? Same document, Exhibit 4. Again, October 24th, there's a notice that the agency files with the Immigration Court. It says the alien's address. It's called a Form I-830. That indicates that Espinal was released on his own recognizance and did not have an address. The agent who filed that Form I-830 did not check the box that upon release from custody, the respondent was reminded of the requirements in Section 239, which are the address change requirements, and was provided with a change of address form, EOIR-33. So we don't even have evidence that those forms were provided to Mr. Espinal. For all we know, he wasn't provided the notice to appear or an actual address change form or told that he had an obligation to provide them with his address. Again, going back to that same document, Exhibit 35, the Government Exhibit 4A, the order for release on own recognizance. Again, when you look real closely, there's no signed acknowledgment by the alien at the bottom where there should be. All these little things add up to a situation where it looks like we have very little information on what Mr. Espinal was actually told or given all the way back in 2004. Now in this case, the judge denied Mr. Espinal's motion to dismiss without a hearing on both issues. So in other words, we didn't have a Speedy Trial Act hearing and we didn't have a hearing on the attack on the underlying removal order. One note that I do think is important, the record does show that the immigration judge's order from 2005 was in error to the extent that it does say that the Espinal was notified of his responsibility to tell the court about his address change. As I mentioned, the documents from the A file that the government provided do not substantiate that claim that the immigration judge made on the removal order. So we believe that in this case, it's uncontested that Mr. Espinal was not provided with the Form EOIR-33 to tell him how to change his address. He wasn't advised when his hearing was going to be. He didn't have a phone number for the court. He wasn't advised of any sort of relief that he might be eligible for. And for those reasons, his failure to exhaust should be What about the prejudice question? Is your man even eligible for voluntary departure given when he was coming and going from the United States? The basic eligibility for voluntary departure is pre-hearing at least, which is before an individual hearing, is that you just not be an aggravated felon. Back in 2004 when this was occurring, he had minimal criminal record. Most of the charges that the government cited in its brief were after 2004. So at the time, had he shown up, he could have applied for voluntary departure. He could have applied for asylum. And we think that based on those factors, he would have had a reasonable likelihood of having a different outcome than the in absentia removal order. Is there any requirement that he be in the United States for any period of time? Not for voluntary departure pre-hearing. If there is a post-hearing request for voluntary departure, then you have to have one year of presence in the United States. So I guess on that one, whether he would have gotten voluntary departure would have depended I suppose on if he requested pre-hearing voluntary departure. Our argument would be based on his biographic info at the time, he would have been likely. If he would have done post-hearing, in other words requested an asylum hearing, he would not have had a year in the U.S. at that point. So then he would not have been eligible for voluntary departure. That is an important distinction I suppose. So with that said, I will reserve the rest of my time for rebuttal. Thank you. Mr. Faith, we'll hear from you. May it please the court, counsel. Mr. Espinel asks the court to excuse him from the natural consequence of his own choice to make himself unreachable and abscond from immigration authorities and on that basis excuse his failure to exhaust remedies. He also asks once again that you assume a conspiracy between ICE and the Department of Justice based on a few weeks civil detention. The court should decline to do so on both claims. Starting with the collateral challenge, once again it's the defendant's burden to prove all three of the 1326D factors. He suggested that he should be excused from his failure to exhaust remedies or pursue judicial review because the agent failed to check a box which indicated that Mr. Espinel was reminded of an obligation to notify the court of change of address. But here Espinel hadn't provided an address to begin with. Additionally, he was instructed, and this was in the record, to meet with a deportation officer periodically and he failed to do so. If he had done so, he could have learned through that officer about the pending hearing. I'm not going to spend a whole lot of time on prong one or two because I think prong three is so clear that even if you find a technical problem with the forms that excused exhaustion of remedies, and I'm not saying there are, it wasn't the kind of defect that would be fundamentally unfair. It's not fundamentally unfair to say that if you make yourself completely unreachable and disappear to a different state without giving immigration authorities any way to possibly get a hold of you, that you're not going to get notice of your hearing. Any reasonable person would understand that. It's not fundamentally unfair to hold him to the consequences of that choice. And there's not any actual prejudice here. Once again, voluntary departure is a weighing of positive and negative equities. And we look at this, and this is someone who had multiple legal crossings, numerous crimes committed in the United States, no real mitigating factors apparent. And I think most significantly, this is someone who was previously granted voluntary departure. He got the relief that he supposedly would ask for now. He immediately flouted it and turned right around and came back to the United States within two weeks. So it's hard to say that it's reasonably likely that any immigration judge is going to say, okay, even though you flouted this privilege, this relief, the last time around, you're I'm going to give you the exact same relief again. There's no reasonable basis to think that a judge would do that. So there's no prejudice here, even if there was a due process violation, nor is there any particularly egregious claims of due process violations. So again, if you're inclined to consider some of the other circuits that have said you don't need prejudice when there's particularly egregious violation, nothing that's particularly egregious. We're talking about some minor defects in the forms. There's no allegation here that government agents acting in bad faith lied to him or did something extreme in order to prevent him from asserting his rights. So the collateral challenge should fail. Do you agree with what Mr. Bondra said about the one year requirement? Is that accurate? Were you following what he said? Remind me, your honor. Well, I asked him if there was any requirement that the alien be present for any period of time before, in order to be eligible for voluntary departure. And he said there's a distinction between pre-hearing requests and post-hearing requests. My understanding is that there is a one year requirement for a post-hearing request and no such requirement for a pre-hearing request. That, I think, was his answer. But you are sitting here too, so. Are you familiar with that rule at all? I'm just wondering if it was applicable here. Honestly, your honor, I'm not familiar off the top of my head. I would respectfully refer to the rule itself. I'd like to talk briefly about speedy trial. I agree we've largely talked about this before since the facts and the law are identical. I just want to reiterate a couple of key points. One of which is that Mr. Espinal, like Mr. Cicito, was not initially detained for illegal reentry. He was initially detained because he lacked lawful status. And it wasn't until a later point that it was understood, after examining the A-file, that he had illegally reentered. And so there's no basis to believe that from the get-go this was some sort of conspiracy. There was a lawful basis to detain him originally. And the case law out there is that if there's a lawful basis for the initial detention, then it's presumed that it's not a ruse. It's not collusion. And the burden is, again, on Espinal to prove collusion. As for the evidentiary hearing, this case is a little different in that there was no evidentiary hearing on either issue. But it was not an abuse of discretion for the judge to decide without a hearing. The judge knew when Espinal was encountered by officers, that it was an executing a federal search warrant in which Mr. Espinal was not named. The judge knew that it was some time later that the A-file was pulled, that he was held for a little over three weeks and then charged. Basically all of the facts that would be relevant to making the speedy trial determination were already apparent. So there was no reason that the judge needed to hold a hearing to develop the facts on that issue. As for collateral attack, it was readily apparent in the record that Espinal failed to give an address, failed to show up to his meetings with the deportation officer, as well as the positive and negative equity type factors that would be significant to prejudice. And I think it's significant here that the defendant has pointed to no particular facts that he would have been able to explore at hearing. It's just sort of, again, a conclusory claim that well, if we'd had a hearing, we could have had a fishing expedition and maybe some facts would have developed. But in the absence of specific articulated claims that could be tested at hearing, there's no reason that it should be held that the judge abused his deciding on the record. So for all of the foregoing reasons, we respectfully urge that you affirm the decision below. Very well. Thank you for your argument. The case is also submitted and the court will file an opinion in due course. Do you want to make some rebuttal? Very well. You're welcome to make it if you wish. All right. Very well. Well, thank you for your argument then. The case is submitted.